Guiseppi **PACE,** a/k/a Joseph Pace and Michelina Pace, his wife, and Fred Pace, Plaintiffs,

v.

**GENERAL ELECTRIC COMPANY,** Defendant.

**Civ. A. No. 62–71 Erie.**

United States District Court, W. D. Pennsylvania.

May 17, 1972.

John G. Gent, Erie, Pa., Robert J. Healy, Bradford, Pa., for plaintiffs.

John M. McLaughlin, Erie, Pa., for defendant.

## OPINION

WEBER, District Judge.

In this action which was filed August 2, 1971 and proceeded to the closing of discovery, the filing of pretrial narratives, the scheduling of a Pretrial Conference on May 15, 1972 and the scheduling for trial at a term beginning May 30, 1972, the defendant, on May 8, 1972, filed a motion to compel the joinder of real parties in interest or to dismiss the claims.

This is a suit for fire loss which plaintiffs allege was due to a piece of defective equipment manufactured by defendant. The fire loss occurred July 24, 1968, and the alleged defective equipment was purchased in December 1967.

The plaintiffs were the owners and occupants of the damaged premises. They claim a loss of $67,385.20, of which the sum of $55,700 was paid by six different insurance carriers. While these carriers are all of diverse citizenship from defendant, only one of the insurance claims exceeded $10,000.

Ordinarily, if a motion were seasonably made, the court would order the joinder of the insurance companies as real parties in interest. Because there are some claims satisfying the jurisdictional amount of $10,000, those parties having claims less than $10,000, but possessing the requisite diversity, could be permitted to intervene as parties-plaintiff under Fed.R. of Civ.P. 24, where their claims would be considered ancillary to the original cause of action. Such intervention does not oust the jurisdiction of the court. Formulabs, Inc. v. Hartley Pen Co., 318 F.2d 485 [9th Cir., 1963]. In Phoenix Insurance Co. v. Woolsey, 287 F.2d 531 [10th Cir., 1961], it was held that such joinder, by intervention or otherwise, did not oust jurisdiction because the total claim arising from a single cause of action exceeded $10,000.

It may well be that such parties may be entitled to intervention of right under Fed.R. of Civ.P. 24(a) because the disposition of this action without their presence may, as a practical matter, impair or impede their ability to protect their interests because the carriers may be otherwise precluded from enforcing their claims in the Pennsylvania courts because of the Pennsylvania rule prohibiting the splitting of a cause of action. Fisher v. Hill, 368 Pa. 53, 81 A.2d 860 [1951]. Plaintiffs might also face the defense of a statute of limitations on their claims. We only mention this possibility because it would appear that the carriers would be entitled to permissive intervention under Fed.R. of Civ.P. 24(b).

In any event, Fed.R. of Civ.P. 17(a) provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement by, or joinder or substitution of, the real party in interest.

Trial in this case is imminent. Defendant has known for a long time that this loss, as is true of most property losses of this type, was covered by insurance, either in whole or in part, yet defendant delayed in presenting this objection until the eleventh hour of this lawsuit.

Some authorities hold that the lack of the real party in interest is a defense to be asserted by a motion under Fed.R. of Civ.P. 12(b) (6), or as a special matter under Fed.R. of Civ.P. 9(a), but,

"Regardless of what vehicle is used for presenting the objection it should be done with *reasonable promptness.* Otherwise, the court may conclude that the point has been waived by the delay." (emphasis supplied). 6 Wright and Miller, Federal Practice and Procedure, § 1554, p. 701.

See Fox v. McGrath, 152 F.2d 616 [2nd Cir., 1945]; E. Brooke Matlack, Inc. v. Walrath, 24 F.R.D. 263 [D.Md.1959]; McLouth Steel Corp. v. Mesta Machine Co., 116 F.Supp. 689 [E.D.Pa.1953]; Yorkshire Insurance Co. v. United States, 171 F.2d 374 [3rd Cir., 1948]; Clark v. Chase National Bank, 45 F. Supp. 820 [S.D.N.Y.1942]; U. S. F. & G. Co. v. Slifkin, 200 F.Supp. 563 [N.D. Ala.1961]; Rosenblum v. Dingfelder, 111 F.2d 406, 407–408 [2nd Cir., 1940].

The cases are replete with the conditions of "seasonable" objection or "timely" objection, and since the rule is made for the protection of the defendant, he may waive it by his inaction, and the court may exercise its discretion on the question of waiver, unless the defect would deprive the court of jurisdiction.

■ The rationale of the rule is to protect the defendant from a multiplicity of suits, to allow defendant to present all his defenses, to protect defendant from multiple liability. This was the rationale of the leading case holding that a partial subrogee was a real party in interest along with the insured, and that both must be joined to protect the defendant. United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S. Ct. 207, 94 L.Ed. 171 [1949].

■ However, the present case is the reverse of the *Aetna* situation. Here the insured has sued for the entire loss. In such a case all defenses are available to the defendant and res judicata will protect a defendant from another suit. The reason for the rule of *Aetna* collapses; *cessat ratio cessat ipse lex.* See: Braniff Airways, Inc. v. Falkingham, 20 F.R.D. 141 [D.Minn.1957].

A variety of devices have been utilized to avoid the strict application of the real party in interest rule. (See the series of Annotations in 13 A.L.R.3rd.)

One of these devices is the "loan receipt" gimmick, which is recognized in Pennsylvania as creating no "interest" thus not requiring the joinder of the insurance carrier who pays on a loan receipt. Since the substantive law of the state governs, this device is applied in the federal courts in cases arising under Pennsylvania law. Watsontown Brick Co. v. Hercules Powder Co., 201 F.Supp. 343 [M.D.Pa., 1962].

However, this device has been labeled a "sham" to cover up payment by one federal district court; Condor Inv. Co. v. Pacific Coca-Cola Bottling Co., 211 F.Supp. 671 [D.Or.1962], and many others refuse to recognize it. City Stores Co. v. Lerner Shops, 133 U.S.App.D.C. 311, 410 F.2d 1010 [1969]; McNeil Construction Co. v. Livingston State Bank, 300 F.2d 88 [9th Cir., 1962].

■ For the purposes of determining the real party in interest, drawing a distinction between an insured who has received payment under a "loan receipt" and an insured who has received payment under a right of subrogation has no real purpose except to expose the rather ridiculous results of adherence to a rigid conceptual analysis of the legal problem.

We perceive no danger to the defendant in this situation, except that which counsel flatly states in his motion, the jury will be prejudiced against his well-known big corporation in a suit by a small individual presenting a disastrous property loss, whereas, in fact, the real beneficiaries of the lion's share of the recovery are a number of well-fed, well-nourished insurance companies. On the other hand, the counsel for the insurance carriers who represents plaintiffs' interest here has a deadly fear of revealing the interest of the insurance carriers to the jury. It is a habit of counsel who strongly insist on their right to trial by jury, to argue that juries are biased, prejudiced, swayed by sympathy or prejudice, unable to follow the instructions of the court, and having no regard for their oath. We have not found this to be so. We feel compelled to say a good word for juries. We find juries to be intelligent and extremely conscientious in the performance of their duties, regardless of the appeals to bias and prejudice made by counsel. In this day the juries selected by the random selection of a cross-section of the population represent a high degree of intelligence and sophistication. With the universality of insurance covering so many aspects of their lives, they show no prejudice against the organization providing this service, nor in the great growth of products liability cases do they show any partiality against large industrial firms. They are well aware that in each case the costs of any liability incurred are passed on to the general public which utilizes the products or the services in

the form of higher prices or increased premiums.

■ While the defendant has delayed raising this objection to a point where the granting of his motion, which really seeks the dismissal of the greatest portion of these claims, could only result in prejudice to the plaintiffs because of the factors mentioned above, and would justify rejection entirely, we believe that a simpler solution is provided by Fed.R. of Civ.P. 17(a). The Rule provides that:

" . . . No action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection *for ratification of commencement of the action by . . . the real party in interest.*" (emphasis supplied).

A leading commentator on the federal rules of civil procedure approves this practice.

"Formal joinder or substitution of the real party in interest will not be necessary when he ratifies the commencement of the action." 6 Wright and Miller, Federal Practice and Procedure, § 1555, p. 709.

See: Southern National Bank of Houston, Tex. v. TRI Financial Corporation, 317 F.Supp. 1173, 1186–1188 [S.D.Tex. 1970] ; Urrutia Aviation Enterprises, Inc. v. B. B. Burson & Associates, 406 F.2d 769 [5th Cir., 1969] ; Crowder v. Gordons Transports, 387 F.2d 413 [8th Cir., 1967].

Under this provision of the Rule it is sufficient if the alleged real parties in interest, i. e., the insurance carriers who paid portions of the loss, file their certificate that the present plaintiffs are authorized to prosecute this action for their benefit, and that they agree to be bound by the final determination in the case.