724 F.Supp. 254 (1989)
PROSPERITY REALTY, INC., Plaintiff,
v.
HACO-CANON, Defendant and Third-Party Plaintiff,
v.
COPELAND CORPORATION, Third-Party Defendant and Fourth-Party Plaintiff,
v.
AMERICAN STANDARD INC. and The Sansone Group Fourth-Party Defendants.
No. 88 Civ. 5746 (RPP).
United States District Court, S.D. New York.
November 7, 1989.
*255 O'Donnell, Fox & Gartner, P.C., New York City by Kenneth Bloom, for plaintiff Prosperity Realty, Inc.
Palmeri, Gaven & Soberman, New York City by John J. Palmeri, for third-party defendant/fourth party plaintiff Copeland Corp.
Susan B. Clearwater, New York City, for American Standard, Inc.
Dennis P. Hannafey, Staten Island, N.Y. by Eric A. Schnittman, for defendant Haco-Canon.
Bell, Kalnick, Klee & Green, New York City by Jack L. Cohen, for fourth party defendant The Sansone Group.

OPINION AND ORDER
ROBERT P. PATTERSON, Jr., District Judge.
This action arises out of a fire that occurred on July 28, 1987 in the building located at 135 William Street in Manhattan. Six actions arising out of that fire have been filed: three in New York State Supreme Court,[1] two in New York City Civil Court,[2] and the one before this Court. The five state court actions were consolidated for trial in New York Supreme Court on May 31, 1989.
The present action was commenced on August 17, 1988 by the building's owner, Prosperity Realty, Inc. ("Prosperity"), against Haco-Canon, and was brought pursuant to this Court's diversity jurisdiction.[3] Haco-Canon subsequently impleaded Copeland Corporation ("Copeland") as a third-party defendant. Copeland then joined American Standard, Inc. and The Sansone Group as fourth-party defendants.
Copeland now moves for an order staying this action pending resolution of the state court actions. In the alternative, Copeland seeks the substitution of Prosperity's insurer as plaintiff pursuant to Rule 17(a), and, also in the alternative, an order requiring coordination of pre-trial discovery in the federal and state court actions.

I. Motion for Stay
Copeland moves for an order staying this federal court action pending the outcome of the New York State Supreme Court consolidated action.[4] Copeland claims that the state court actions each arise out of the same occurrence and involve issues of law and fact similar or identical to those involved in this action. Copeland argues that the state court action should be determined first in order to avoid difficult issues of res judicata and collateral estoppel that might arise out of inconsistent verdicts in the two forums. The principles of judicial economy and comity between the courts are also invoked by Copeland as mandating a stay of this action.
Federal courts generally have a "virtually unflagging obligation ... to exercise the jurisdiction given them." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). However, in certain "exceptional circumstances," a federal *256 court may defer to a concurrent state court proceeding in the interests of "`wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Id. (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).[5] Neither Copeland nor Prosperity cite Colorado River or its progeny in their papers, but it is clear that Colorado River provides the only basis on which the Court could grant Copeland's motion.[6]
By seeking a stay, Copeland essentially is asking this Court to find that there are exceptional circumstances warranting deference to the state court litigation. The Supreme Court has noted that, for Colorado River purposes, a stay is the equivalent of a dismissal. In either event, the district court must conclude
that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.... Thus, the decision to invoke Colorado River necessarily contemplates that the federal court will have nothing to do in resolving any substantive part of the case, whether it stays or dismisses.
Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983). See also Bethlehem Contracting Co. v. Lehrer/McGovern, 800 F.2d 325, 327 n. 1 (2d Cir.1986) ("Cone rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the exceptional circumstances test").
Copeland, the party seeking the stay, bears the burden of overcoming the "heavy presumption favoring the exercise of jurisdiction." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d at 327; Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 210 (2d Cir.1985). Whether to abstain is a decision within the sound discretion of the district court. Arkwright-Boston Mfrs., 762 F.2d at 210.
In Colorado River, the Supreme Court established four factors to be considered in determining whether exceptional circumstances are present: (1) the assumption by one court of jurisdiction over property, (2) the convenience of the forums, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the courts obtained jurisdiction. Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246-47. In Moses H. Cone, the Court added two additional factors: whether federal law provides the rule of decision, and whether the state court will protect adequately the parties' rights. 460 U.S. at 23-27, 103 S.Ct. at 941-43; see also Bethlehem Contracting, 800 F.2d at 327 (noting that Moses H. Cone added two new considerations). The decision to defer to a parallel state court litigation "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Mo- *257 ses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937.
Applying Colorado River and Moses H. Cone to this case, it is clear that Copeland has not established the requisite exceptional circumstances to convince this Court to stay the present action. Several of the factors can be dealt with briefly. To begin with, neither court has exercised jurisdiction over property. Nor can it be suggested that one forum is more convenient than the other: the state courts of original jurisdiction in New York County are next door to the federal courthouse. See Arkwright-Boston Mfrs., 762 F.2d at 210. Nor does there appear to have been such significant progress in the state court action that deference to that action is warranted. See Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940 ("priority should not be measured exclusively by which complaint was filed first but, rather, in terms of how much progress has been made in the two actions").
The paramount consideration in these cases is the likelihood of piecemeal litigation if the single subject matter is litigated in two forums. Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937. Although there is some danger of piecemeal litigation occurring here, it is not as threatening as it was in cases where courts have elected to abstain.
In Arkwright-Boston Mfrs, a case which neither party cited to the Court in its papers but which must be dealt with here, the Second Circuit upheld a district court's decision to abstain from exercising its diversity jurisdiction. That case involved a federal court action that arose out of a blackout in midtown Manhattan which also spawned over 40 New York state court actions involving 12 defendants and revolving around the same facts. Id. at 208. Additionally, 300 claims against the City appeared imminent. Id. The district court, applying its discretion, decided to abstain from its diversity jurisdiction, and the Second Circuit affirmed.
Arkwright-Boston Mfrs differs from this case in several significant ways. The number of claims and parties in that case was significantly greater than here, making piecemeal litigation a much graver threat.[7] While it is true that inconsistent dispositions of the claims in state and federal forums could lead to problems of issue and claim preclusion, such is the case whenever parties litigate similar claims in two forums concurrently. The threat in this case is not enough to cause this Court to abstain from meeting its "virtually unflagging obligation" to exercise its jurisdiction.
The fact that state law provides the rule of decision in this case, a truism in diversity cases, does not militate strongly against the exercise of federal jurisdiction, because no novel or unique state law issues are involved. See Bethlehem Contracting Co., 800 F.2d at 328 (only "in some rare circumstances [may] the presence of state law issues ... weigh in favor of ... surrender" of federal jurisdiction) (quoting Moses H. Cone, 460 U.S. at 26, 103 S.Ct. at 942). The source of the law to be applied is only an important factor when federal law issues exist in a case, and in that event the existence of such issues weighs in favor of the exercise of federal jurisdiction. See, e.g., Moses H. Cone, 460 U.S. at 23-24, 103 S.Ct. at 941 (existence of federal issues a factor in decision to retain jurisdiction). Thus, the fact that only state law issues are involved here does not support Copeland's motion.
Copeland points out in support of its motion that "[t]he New York State Court system is a sufficient ground for the fair and adequate determination of what here is a garden variety negligence case." While quite likely true, that fact does not weigh in favor of a stay in this case. The danger that a state court will not protect a party's rights "is significant only if it militates in favor of federal jurisdiction." Zemsky v. *258 City of New York, 821 F.2d 148, 153 (2d Cir.1987), cert. denied, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1988) (citation omitted).
This Court, as did the Supreme Court in Moses H. Cone, emphasizes that its task here
is not to find some substantial reason for the exercise of federal jurisdiction ...; rather the task is to ascertain whether there exist `exceptional' circumstances, the `clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction.
460 U.S. at 25-26, 103 S.Ct. at 942 (emphasis in original). Copeland has not set forth adequate reasons for this court to defer to the state court proceedings, and its motion is therefore denied.

II. Rule 17(a) Motion
Copeland also moves to substitute Fireman's Fund Insurance Company as the plaintiff in this action pursuant to Fed.R. Civ.P. 17(a) on the grounds that Fireman's Fund is Prosperity's subrogee and is therefore the real party in interest in this action. Fireman's Fund has paid $228,127.10 to Prosperity, which constitutes all but $1,000 of Prosperity's damages resulting from the fire. Plaintiff has submitted an affidavit of ratification from Christina Slevin, a Recovery Line Senior for Fireman's Fund, in which she states that Fireman's Fund ratifies this action in the name of Prosperity pursuant to Rule 17(a), that Fireman's Fund agrees to be bound by the results of this action, and waives any right to pursue its subrogation rights outside of this proceeding except to the extent the Court grants Copeland's motion to stay.
Rule 17(a) provides, in relevant part:
... Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an expressed trust, a party with whom or in whose name a contract has been made for the benefit of another or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest; and such ratification ... shall have the same effect as if the action had been commenced in the name of the real party in interest.
Copeland asserts that Prosperity's $1,000 interest in the litigation is not sufficient for it to be the real party in interest. This Court need not reach that issue, however, because of Fireman's Fund's ratification. The effect of service of a Rule 17(a) ratification agreement is the same as if the insurer had been a party from the beginning of the action. United Coal Companies v. Powell Construction Co., 839 F.2d 958, 960 (3d Cir.1988). The purpose of Rule 17(a) is to protect the defendant from subsequent actions by the party actually entitled to recover, and to ensure that the judgment will be given its proper res judicata effect. Notes of Advisory Committee on Rules, 1966 Amendment to Rule 17(a). The ratification by Fireman's Fund submitted by Prosperity accomplishes that purpose, and it is therefore unnecessary to substitute Fireman's Fund as the plaintiff in this action. See Acme Markets, Inc. v. Shaffer Trucking, Inc., 102 F.R.D. 216 (E.D.Pa.1984); Hancotte v. Sears, Roebuck & Co., 93 F.R.D. 845, 846 (E.D.Pa.1982); Stouffer Corporation v. Dow Chemical Co., 88 F.R.D. 336, 337 (E.D.Pa.1980).
Copeland also argues that Fireman's Fund is controlling the litigation on Prosperity's behalf and should therefore be the named plaintiff. That argument is not persuasive. "As a practical matter, ... the insurance company will control the prosecution no matter in whose name it is brought." C. Wright & A. Miller, Federal Practice and Procedure § 1546 at 656. Therefore, substitution of Fireman's Fund is inappropriate here.

III. Motion for Joint Discovery
Copeland also asks this Court to order that pre-trial discovery in this case be coordinated with the state actions. Neither *259 party having argued this motion in its brief, the motion is denied with leave to renew if the parties are unable to agree to a discovery plan.

IV. Conclusion
Copeland's motions (1) for an order staying this action pending the outcome of the state actions, (2) for an order substituting Fireman's Fund as the named plaintiff, and (3) for an order that pre-trial discovery in this action shall be coordinated with the state sections are denied.
SO ORDERED.
NOTES
[1] They are Smyth, Sanford & Gerard and Robert Sanford v. Haco Canon, Inc., The Sansome Group, Prosperity Realty, Inc. and Copeland Corp. (summons dated March 31, 1988); Dong Won Kim d/b/a Twin Card and Gift Company v. Prosperity Realty, Inc., The Sansome Group, and Haco Canon Corp. (summons dated August 12, 1988); and Lorimar Enterprises Corp. v. Prosperity Realty, Inc. (summons dated August 30, 1988).
[2] They are Eastern Risk Managers, Inc. v. Haco Canon, Inc., Prosperity Realty, Inc., and Smyth, Sanford & Gerard, Inc. (summons undated) and Aetna Casualty & Surety Co. a/s/o/ J.P. Sedlak Associates Inc v. The Sansone Group, Haco Canon Inc. and Copeland Corp. (summons dated September 19, 1988).
[3] There are no federal issues in this case.
[4] Plaintiff Prosperity Realty is the only party to oppose Copeland's motion, although all parties appeared at oral argument.
[5] The Colorado River "exceptional circumstances" test must be distinguished from the traditional abstention doctrines, which are confined to three narrow categories. Those three doctrines allow a federal court to abstain from exercising its jurisdiction where: (1) a federal constitutional issue is presented that might be mooted by a state court determination of state law, (2) difficult questions of state law bearing on significant state policy problems are presented or whose resolution might be disrupted, and (3) federal jurisdiction has been invoked to restrain state criminal or tax proceedings. Colorado River, 424 U.S. at 813-17, 96 S.Ct. at 1244-46. None of those doctrines applies in this case.
[6] Most of the cases Copeland cites pre-date Colorado River. See Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Occidental Life Insurance v. Nichols, 216 F.2d 839 (5th Cir.1954); Crawford v. Seaboard Coast Line Railroad, 286 F.Supp. 556 (S.D.Ga.1968).

The other cases cited by Copeland are distinguishable. See Ollie v. Riggin, 848 F.2d 1016 (9th Cir.1988) (federal court action stayed where state law was unclear on res judicata effect of a vacated judgment from which an appeal is pending); Mahaffey v. Bechtel Associates, 699 F.2d 545 (D.C.Cir.1983) (plaintiffs had filed identical actions in state and federal courts); Centronics Data Computer Corp. v. Merkle-Korff Industries, 503 F.Supp. 168 (D.N.H. 1980) (state action filed first; federal action was in a different state; actions involved identical parties).
[7] Moreover, the court found that the state cases had progressed further along the path to resolution than the federal case, whereas here there does not appear to be such progress. The Arkwright-Boston Mfrs court also noted the presence of "serious questions of state law," which do not appear to be present in this case. Indeed, Copeland calls this case a "garden variety negligence case."